UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DAVID MONGIELO, *et al.*,

                    Plaintiffs,

            v.                                                    22-CV-116-LJV
                                                                  DECISION & ORDER
KATHLEEN HOCHUL, *et al.*,

                    Defendants.

_____

On February 8, 2022, the plaintiffs, a group of parents whose children attend

public schools in Western New York, commenced this action in their personal and

representative capacities.  Docket Item 1.  They assert claims under 42 U.S.C. § 1983

related to a state-wide mask mandate that was enacted during the COVID-19

pandemic.  *Id.*  The plaintiffs allege that the defendants—a group of New York State

officials, Erie County officials, and superintendents of various school districts—enacted

and enforced that mask mandate.  *Id.*  And they say that the mandate violated their and

their children's rights under the United States Constitution's First Amendment, Fourth

Amendment, Fifth Amendment, Ninth Amendment, Fourteenth Amendment, Supremacy

Clause, and Guarantee Clause.  *Id.*

The defendants have filed a total of six motions to dismiss the complaint.  Docket

Items 30, 35, 64, 68, 72, and 79.  The plaintiffs responded to each of those motions,

Docket Items 47, 51-1, 75, 76, 77, and 80, and most of the defendants replied, Docket

Items 50, 56, 78, and 81.  For the following reasons, the defendants' motions to dismiss

are granted.

## FACTUAL BACKGROUND[1]

On August 27, 2021, more than a year into the COVID-19 pandemic, Howard Zucker, then-New York State Commissioner of Health, issued "[t]he main mask mandate at issue in this case."  Docket Item 1 at ¶ 116.  It stated, in relevant part, that "any person who is over age two and able to medically tolerate a face-covering may be required to cover their [sic] nose and mouth with a mask or face-covering when: (1) in a public place and unable to maintain, or when not maintaining, social distance; or (2) in certain settings . . . which may include schools."  *Id.* at ¶ 117.  And it provided that the Health Commissioner would "issue findings regarding the necessity of face-covering requirements at the time such requirements are announced."  *Id.*

On December 10, 2021, defendant Mary T. Bassett, the New York State Commissioner of Health, announced such requirements.  *Id.* at ¶¶ 118-19.  More specifically, she promulgated a rule that required "all state residents to wear a face-covering [] if above the age of [two] and able to medically tolerate same while in a public place and not able to maintain social distancing."  *Id.* (citing 10 N.Y. Comp. Codes R. & Regs. tit. 10, § 2.60(a)).  Defendant Kathleen Hochul, the Governor of New York, endorsed that rule, which applied to "schools and school children."  *Id.*

On January 24, 2022, New York State Supreme Court Justice Thomas Rademaker "struck down" the December 2021 rule.  *Id.* at ¶¶ 109, 120-21.  But defendant Mark C. Poloncarz, the Erie County Executive, "publicly reminded everyone,

---

[1] On a motion to dismiss, the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  The following facts are taken from the complaint, Docket Item 1, unless otherwise noted.

including students, that [a mask] mandate [was] still in effect in Erie County" pursuant to the "emergency decree" he had issued on November 23, 2021.  *Id.* at ¶¶ 109, 127.[2]

Because it had been struck down the day before, the state rule requiring masks in public schools "was a nullity" during the school day on January 25, 2022.  *Id.* at ¶ 123.  That day, "many students"—including the plaintiffs' children—"attempted to enter school mask-free."  *Id.* at ¶ 114.  But when they did, they "were accosted by school authorities and the police, and [they] were forced to leave school or remain isolated in a separate room for several hours while receiving no educational services."  *Id.*[3]

State Health Commissioner Bassett issued another rule on January 31, 2022—the one in effect when the plaintiffs commenced this action.  *Id.* at ¶ 124.[4]  It required that face-coverings be used in "school settings" by "teachers, staff, students, and visitors . . . over age two and able to medically tolerate a face covering/mask."  *Id.*  It specifically prohibited "mask breaks."  *Id.*  Under that rule, the plaintiffs' children were "forced to wear facemasks nearly six hours a day while attending school."  *Id.* at ¶ 105.  The children could not "opt out" of the mask mandate because "[s]chool attendance is compulsory" in New York.  *Id.* at ¶¶ 105-06.

The mask mandate was rescinded on March 2, 2022.  Docket Item 30-5 at 14; *see* Docket Item 47 at 2 (conceding that the mask mandate has been rescinded).

---

[2] Defendant Gale R. Burstein, the Commissioner of the Erie County Department of Health, had "issued a similar order on the same date."  Docket Item 1 at ¶ 128.

[3] At 5:00 p.m. on January 25, 2022, the New York State Supreme Court, Appellate Division, Second Department, temporarily stayed Justice Rademaker's order striking down the state rule.  Docket Item 1 at ¶ 122.

[4] Throughout this opinion, this Court refers to the various rules requiring masking in schools collectively as the "mask mandate."

## THE PARTIES

### I.    THE DEFENDANTS

The defendants are officials who have "promulgated and/or enforced mask mandates" or who "stand[] ready to impose or reimpose mask mandates" should a mandate be "struck down by court order."  Docket Item 1 at ¶¶ 107-08.

Defendants Hochul and Bassett, as well as Betty A. Rosa, the Commissioner of the New York State Education Department (collectively, the "state defendants"), are sued in their individual and official capacities.  *Id.* at ¶¶ 80-88.  Defendants Poloncarz and Burstein (collectively, the "Erie County defendants") also are sued in their individual and official capacities.  *Id.* at ¶¶ 102-04.

A number of Western New York school district superintendents also have been named as defendants: Joseph Siracuse, Superintendent of the Wayne Central School District, *id.* at ¶ 89; Susan Hasenauer, Superintendent of the Newark Central School District, *id.* at ¶ 90; Thomas Simon, Superintendent of the Portville School District, *id.* at ¶ 91; Sabatino Cimato, Superintendent of the Kenmore-Tonawanda School District, *id.* at ¶ 92; Kristin Swann; Superintendent of the Spencerport Central School District, *id.* at ¶ 93; Hank Stopinski, Superintendent of the Royalton-Hartland School District, *id.* at ¶ 94; Sean Croft, Superintendent of the Starpoint School District, *id.* at ¶ 95; Karen Geelan, Superintendent of the Olean City School District, *id.* at ¶ 96; Michael Cornell, Superintendent of the Hamburg Central School District, *id.* at ¶ 97; Michael Baumann, Superintendent of the Newfane Central School District, *id.* at ¶ 98; Robert Breidenstein, Superintendent of the Salamanca City Central School District, *id.* at ¶ 99; Douglas Scofield, Superintendent of the Iroquois Central School District, *id.* at ¶ 100; and

Maureen Donahue, Superintendent of the Southwestern Central School District, *id.* at ¶ 101 (collectively, the "superintendent defendants"). The superintendent defendants, who are sued in their official and individual capacities, are "responsible for enforcing and/or issuing orders and mandates requiring students to wear masks" in their respective districts. *Id.* at ¶¶ 89-101. They also are "responsible for making sure that court orders are respected and enforced and for mask-related disciplinary policies and procedures." *Id.*[5]

## II.    THE PLAINTIFFS

The plaintiffs "are parents of children who [we]re subjected to the defendants' various mask requirements." *Id.* at ¶ 20.[6]

### A.    Niagara County Parents and Students

The following plaintiffs are parents of children who attend public schools in Niagara County:

Sarah Greenawalt is the parent of two children who attend Royalton-Hartland Elementary School: EE, a third-grader; and CG, who is in pre-school. *Id.* at ¶ 42. On

---

[5] The complaint alleges that Cimato "refused to comply with the court order voiding the mask mandate," Docket Item 1 at ¶ 40, and that Baumann "insisted on enforcing the mask mandate on January 25, 2022," *id.* at ¶ 66. It also alleges that on January 25, 2022, one plaintiff's children "were forced to wear masks" even after the plaintiff "notified [Siracuse] that a court decision had nullified the mandate." *Id.* at ¶ 24. But the complaint does not allege that Siracuse was the school official who forced that plaintiff's children to wear masks. *See id.* Nor does it not make specific allegations about the conduct of any superintendent defendant other than Cimato, Baumann, and Siracuse. *See generally* Docket Item 1.

[6] The children's ages and grade levels are those alleged in the complaint.

January 25, 2022, "[Greenawalt's] children were denied entrance to the school with the police present," presumably because they were not wearing masks. *Id.* at ¶ 43.

Marian Pilecki is the parent of DP, who attends Starpoint High School. *Id.* at ¶ 63. DP requested a "medical exemption" from the mask mandate, "but it was denied by the school without just cause." *Id.* at ¶ 64.

David Mongielo is the parent of DM, who attends Lockport High School. *Id.* at ¶ 22. The complaint does not allege that DM encountered any specific issues with masking. *See generally* Docket Item 1.

Marcy Hall is the parent of two children who attend Starpoint Elementary School: HH, a fifth-grader; and JH, a third-grader. *Id.* at ¶ 44. The complaint does not allege that Hall's children encountered any specific issues with masking. *See generally* Docket Item 1.

Heather Quattrini is the parent of three students in the Newfane School District: MQ, a twelfth-grader; MQ, a ninth-grader; and MQ, a ninth-grader. *Id.* at ¶ 65. The complaint does not allege that Quattrini's children encountered any specific issues with masking. *See generally* Docket Item 1.

### B.   Wayne County Parents and Students

The following plaintiffs are parents of children who attend public schools in Wayne County:

Jessica Bogdanoff is the parent of three children in the Wayne Central School District: LB, a fourth-grader; HB, a third-grader; and OB, a kindergartener. *Id.* at ¶ 23. On January 25, 2022, all three students arrived at school without masks. *Id.* at ¶ 24. OB "was handed a mask immediately," *id.* at ¶ 25, while LB and HB were "immediately"

6

sent to the principal's office and then "placed in an isolation room . . . for three hours," *id.* at ¶ 26.  LB and HB "played on their [laptops] all day," did not participate in recess, and ate their lunch in the isolation room.  *Id.* at ¶ 27.  In addition to the events of January 25, 2022, LB, HB, and OB "had other issues related to masking."  *Id.* at ¶ 28.  For example, they were forced to wear masks outside and in "classrooms that [we]re over 80 degrees."  *Id.* at ¶ 29.  They were "not allowed to play tag or be near each other at recess."  *Id.*  "[M]ask breaks [we]re rarely provided," and they were even "made to color pro-mask propaganda."  *Id.*  Due to the children's "headaches, bloody noses, and allergies," their pediatrician "wrote a doctor's note to request desk shields"—presumably in lieu of face masks.  *Id.* at ¶ 30.  But "[t]he school physician denied [that] request."  *Id.*

April Bueg is the parent of DB, a ninth-grader who attends Newark Senior High School.  Docket Item 1 at ¶ 31.  Before January 25, 2022, DB had "numerous confrontations over masking that interfered with his education."  *Id.* at ¶ 35.  Then, on January 25, he "was suspended and removed from class for not wearing a mask."  *Id.* at ¶¶ 32-34.

Jessi Fava is the parent of three children in the Wayne Central School District: KC, a twelfth-grader; MF, a sixth-grader; and AA, a first-grader.  *Id.* at ¶ 36.  On January 25, 2022, AA's principal "entered AA's class and ordered her to wear a mask."  *Id.* at ¶ 37.  "MF has been disciplined for lowering his mask to take a drink at lunch."  *Id.*  But the complaint does not allege that KC encountered any specific issues with masking.  *See generally* Docket Item 1.

Ashley Maggio is the parent of two students in the Wayne Central School District: TM, a fourth-grader; and KM, a second-grader.  *Id.* at ¶ 51.  "Her children have had

numerous problems with masks." *Id.* at ¶ 52.  For example, KM has experienced "chronic rashes," and TM has experienced "exacerbation of asthma, headache[s,] and [an] upset stomach." *Id.*  On January 25, 2022, "TM was repeatedly ordered to wear a mask." *Id.*

### C.    Cattaraugus County Parents and Students

The following plaintiffs are parents of children who attend public schools in Cattaraugus County:

Tim Hanson is the parent of two children who attend Portville School: KM, an eighth-grader; and RM, a fourth-grader.  *Id.* at ¶ 45.  KM "has trouble breathing while wearing a mask," and RM "complains about ear pain"—presumably related to masking. *Id.* at ¶¶ 46-47.  The students' school district has "ignored" "[a]ll complaints" about these issues.  *Id.* at ¶ 48.

Amy Hill is the parent of SO, a sixth-grader who attends Seneca Elementary School.  *Id.* at ¶ 49.  On January 25, 2022, SO "was ordered to leave the school for not wearing a mask"; in fact, SO "has been sent home several times for mask violations." *Id.* at ¶ 50.

Kerrie McKenzie is the parent of EC, a kindergartener who attends Eastview Elementary School.  *Id.* at ¶ 53.  "EC has been hassled by a teacher over masks."  *Id.* at ¶ 54.

Heather Oldenburg is the parent of NO, a third-grader who attends Eastview School.  *Id.* at ¶ 57.  NO "doesn't want to attend school" due to issues caused by mask-wearing.  *Id.* at ¶ 59.  Masks cause him physical discomfort, including "rashes and irritation on the back of his ears from mask straps" and "chronic sore throats."  *Id.* at ¶¶

8

59, 62.  "His mask gets saturated with saliva and becomes filthy from being touched all day."  *Id.* at ¶ 60.  He even "was forced to run over a mile in gym class" while wearing a mask.  *Id.* at ¶ 61.  In addition to all that, masking has impacted NO's "speech development."  *Id.* at ¶ 58.

Lisa Reynolds is the parent of LR, a seventh-grader who attends Portville Elementary School.  *Id.* at ¶ 67.  On January 25, 2022, "LR was suspended . . . for not wearing a mask."  *Id.* at ¶ 68.

Phillip Slater is the parent of SS, a sixth-grader who attends Seneca Elementary School.  *Id.* at ¶ 71.  On January 25, 2022, SS was sent to the principal's office and was "hassled" because she did not wear a mask.  *Id.* at ¶ 72.  Slater eventually picked her up from school that day.  *Id.*

Tia Billyard is the parent of three children in the Olean City School District: EB, a third-grader; EB, a first-grader; and AB, a kindergartener.  *Id.* at ¶ 77.  EB[7] "has had breathing difficulties with [] masks due to asthma," but the school "responded [to those difficulties] with indifference."  *Id.* at ¶ 78.  The complaint does not allege that Billyard's other children encountered any specific issues with masking.  *See generally* Docket Item 1.

Bianca Federowicz is the parent of BF, who attends Portville Central School.  *Id.* at ¶ 38.  The complaint does not allege that BF encountered any specific issues with masking.  *See generally* Docket Item 1.

---

[7] The complaint does not specify whether the EB who has breathing difficulties is the first-grader or the third-grader.

### D.    Erie County Parents and Students

The following plaintiffs are parents of children who attend public schools in Erie

County:

James Lewis is the parent of two children in the Hamburg Central School District:

TL, an eighth-grader; and AL, a sixth-grader.  *Id.* at ¶ 55.  On January 25, 2022, "TL

was told he could not attend school . . . without a mask."  *Id.* at ¶ 56.  The complaint

does not allege that AL encountered any specific issues with masking.  *See generally*

Docket Item 1.

Adam Sabadasz is the parent of two students who attend Armor Elementary

School: CS, a first-grader; and IS, a kindergartener.  *Id.* at ¶ 69.  On January 25, 2022,

his children's principal denied them "entrance to the school," presumably because they

did not have masks.  *Id.* at ¶ 70.

Christina Velez-Uebelhoer is the parent of three children in the Iroquois School

District: MQ, a tenth-grader; MQ, a ninth-grader; and MQ, a sixth-grader.  *Id.* at ¶ 73.

Velez-Uebelhoer "pulled" her children out of school "because of the mask requirement

but intend[ed] to re-enroll them if it [wa]s vacated."  *Id.*

Deborah Wagner is the parent of NB, an eighth-grader who attends Iroquois High

School.  *Id.* at ¶ 74.  "NB has been hassled over masks and has suffered from infections

due to wearing a mask."  *Id.* at ¶ 75.

Adam Gray is the parent of four students in the Kenmore-Tonawanda School

District: AG, a seventh-grader; AG, a third-grader; JG, a first-grader; and CG, a first-

grader.  *Id.* at ¶ 39.  The complaint does not allege that any of Gray's children

encountered any specific issues with masking.  *See generally* Docket Item 1.

### E.     Monroe County Parent and Student

Bonnie Gary is the parent of GG, a tenth-grader who attends Spencerport High School.  *Id.* at ¶ 41.  The complaint does not allege that GG encountered any specific issues with masking.  *See generally* Docket Item 1.

### F.     Chautauqua County Parent and Student

Carol Wynham is the parent of SW, a tenth-grader who attends Southwestern High School.  *Id.* at ¶ 76.  The complaint does not allege that SW encountered any specific issues with masking.  *See generally* Docket Item 1.

### THE DISPUTE

### I.     THE HARM TO THE PLAINTIFFS' CHILDREN

When the plaintiffs' children were required to wear masks at school, they "had difficulty communicating and receiving communication."  *Id.* at ¶ 113.  "Moreover, many of them have suffered from physical symptoms including headaches and psychological effects such as anxiety."  *Id.*

In addition to alleging specific harms suffered by their children, the plaintiffs allege that mask-wearing causes "general harm to all students."  *Id.* at 20 (capitalization omitted).  For example, they say, masks inhibit students' social development by impairing students' ability to communicate and bond with their fellows.  *Id.* at ¶¶ 129-61, 182-90.  Mask-wearing also can interfere with a child's education by making it difficult to learn by imitation; this can particularly impact special-needs children.  *Id.* at ¶¶ 162-82.  Additionally, masking can cause mental health issues.  *Id.* at ¶¶ 183-99.  And, the

plaintiffs allege, masks can cause difficulty breathing and other physical problems. *Id.* at ¶¶ 202-17.

## II.     THE DEFENDANTS' "JUSTIFICATION"

The plaintiffs allege that the defendants imposed mask mandates to "stop[] the transmission of [COVID]-19," which the defendants believe "represents an abnormal and unparalleled threat of death or disability to school[-]aged children." *Id.* at ¶¶ 218-222.  But according to the plaintiffs, COVID-19 "does not represent an abnormal and unparalleled threat of death or disability to school[-]aged children," and "[m]asks are ineffective at stopping the transmission of [COVID]-19." *Id.* at ¶¶ 223-24; *see also id.* at ¶¶ 240-89 (alleging "that COVID-19 currently does not represent an emergency or abnormal threat" and that masks are not "an effective way to stop the transmission of COVID-19" (some capitalization omitted)).  In other words, the plaintiffs say that masks are both unnecessary and inefficient.

## PROCEDURAL BACKGROUND

On February 8, 2022, the plaintiffs commenced this action alleging the violations of their and their children's rights mentioned above and addressed below.  Docket Item 1.  They seek: (1) a declaration that the mask mandate is unconstitutional and therefore void; (2) preliminary and permanent injunctions enjoining the defendants from enforcing the mask mandate; (3) compensatory damages; (4) punitive damages; and (5) all costs and disbursements incurred in the prosecution of this action, including attorneys' fees. *Id.* at 45.

On March 3, 2022, some of the superintendent defendants—Hasenauer, Swann, Stopinski, Baumann, Geelan, and Breidenstein—moved to dismiss the complaint. Docket Item 30.  On March 17, 2022, the plaintiffs responded, Docket Item 47, and on March 24, 2022, the moving defendants replied, Docket Item 50.

On March 8, 2022, Siracuse, another superintendent defendant, moved to dismiss the complaint.  Docket Item 35.  On April 18, 2022, the plaintiffs responded, Docket Item 51-1, and on April 27, 2022, Siracuse replied, Docket Item 56.

On May 11, 2022, another group of superintendent defendants—Cimato, Cornell, Croft, Donahue, and Scofield—moved to dismiss the complaint.  Docket Item 64.  On May 25, 2022, the plaintiffs responded, Docket Item 75, and on June 1, 2022, the moving defendants replied, Docket Item 78.

On May 12, 2022, the Erie County defendants moved to dismiss the complaint. Docket Item 68.  On May 26, 2022, the plaintiffs responded.  Docket Item 76.  The Erie County defendants did not reply.

On May 13, 2022, the state defendants moved to dismiss the complaint.  Docket Item 72.  On May 27, 2022, the plaintiffs responded.  Docket Item 77.  The state defendants did not reply.

On June 10, 2022, Simon, the remaining superintendent defendant, moved to dismiss the complaint.  Docket Item 79.  On June 24, 2022, the plaintiffs responded, Docket Item 80, and on June 30, 2022, Simon replied, Docket Item 81.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

The plaintiffs assert claims under 42 U.S.C. § 1983.  Docket Item 1.  "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

Because many of the motions to dismiss assert identical grounds for dismissal— indeed, many of the defendants explicitly incorporate the arguments of their co-defendants, *see* Docket Item 35-3 at 3; Docket Item 68-4 at 2; Docket Item 72-1 at 23; Docket Item 79-4 at 21—this Court organizes its analysis based on the defendants' arguments rather than by their separate motions.[8]

---

[8] This Court does not address the failure-to-exhaust argument raised by Simon, a superintendent defendant.  *See* Docket Item 79-4 at 10-11, 13-14.  That argument

## I.   ARTICLE III ISSUES

"Article III of the United States Constitution provides that the judicial power of the United States extends to certain 'cases' and 'controversies.'"  *Stagg, P.C. v. U.S. Dep't of State*, 983 F.3d 589, 601 (2d Cir. 2020).  "The case-or-controversy requirement of Article III encompasses both the requirement that the plaintiff establish standing to sue and the related doctrine of mootness."  *Id.*

### A.   Standing

"To establish standing, 'the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'"  *Carlone v. Lamont*, 2021 WL 5049455, at *2 (2d Cir. Nov. 1, 2021) (summary order) (alteration omitted) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).  "An injury in fact 'must be concrete and particularized, as well as actual or imminent,' rather than 'conjectural or hypothetical.'"  *Id.* (quoting *Carney v. Adams*, 141 S. Ct. 493, 498 (2020)).  The state defendants argue that the plaintiffs lack standing to challenge the mask mandate.  Docket Item 72-1 at 11-12.  The plaintiffs do not respond to that argument.  *See* Docket Item 77.

Several courts have found that plaintiffs challenging mask mandates do not have standing to do so.  But in those cases, the plaintiffs did not allege that they actually were required to wear masks.  *See, e.g.*, *Carlone*, 2021 WL 5049455, at *3 ("[T]he complaint does not state that [the plaintiff] has ever actually been required to wear a mask or has

---

applies to the claims brought by only one plaintiff, and the Court finds it unnecessary to reach that argument in light of the numerous other grounds for dismissal.  For similar reasons, this Court does not address some defendants' arguments that they were not properly served.  *See* Docket Item 30-5 at 15-17.

been subject to enforcement of the mask mandate."); *Davis v. de Blasio*, 2021 WL 4521878, at *2 (E.D.N.Y. Oct. 4, 2021) ("Here, plaintiff, a resident of Maryland, has failed to allege facts to show how she is personally affected by the New York City mask mandate.").  On the other hand, at least one court has found that a parent of a child had standing to challenge a mask mandate requiring the child to mask at school.  *See Donohue v. Hochul*, 2022 WL 673636, at *4 (S.D.N.Y. Mar. 7, 2022) (noting that the complaint alleged that the child "ha[d] difficulty communicating" and that wearing a mask "would further inhibit her speech progress" and cause her to have "maladaptive behaviors").

The students in this case were required to wear masks to attend school.  *See* Docket Item 1 at ¶¶ 22-78.  Some suffered physical issues related to masks, while others were suspended when they refused to comply with the mask mandate.  *See id.* Those specific allegations establish an injury in fact that satisfies Article III's standing requirements, *see Donohue*, 2022 WL 673636, at *4, and the plaintiffs therefore have standing to challenge the mask mandate.

### B.    Mootness

The "uncontroverted core" of Article III's cases-and-controversies limitation is "the principle that, at all times, the dispute before the court must be real and live, not feigned, academic, or conjectural."  *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of Watervliet*, 260 F.3d 114, 118 (2d Cir. 2001).  So "[w]hen the issues in dispute between the parties are no longer 'live,' a case becomes moot and the court—whether trial, appellate, or Supreme—loses jurisdiction over the suit, which therefore must be

dismissed." *Lillbask v. Conn. Dep't of Educ.*, 397 F.3d 77, 84 (2d Cir. 2005) (internal citations and quotation marks omitted).

But "[t]he Supreme Court has 'recognized an exception to the general rule regarding mootness . . . in cases that are capable of repetition, yet evading review." *Id.* at 84-85 (alteration omitted) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)).  That exception "applies only in exceptional situations where two circumstances are simultaneously present: (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* at 85 (alterations, citations, and internal quotation marks omitted); *see also Granite State Outdoor Advert., Inc. v. Town of Orange*, 303 F.3d 450, 451 (2d Cir. 2002) ("The voluntary cessation of allegedly illegal activities will usually render a case moot 'if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" (citation omitted)).  "To create a reasonable expectation of recurrence, repetition must be more than theoretically possible"; "[m]ere speculation that the parties will be involved in a dispute over the same issue" is not sufficient.  *Russman*, 260 F.3d at 120 (citation omitted).[9]

---

[9] Courts have noted that a "'highly selective' discontinuance of enforcement" can "support the exercise of jurisdiction" when a defendant has ceased allegedly illegal conduct, *see Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 59 (2d Cir. 1992) (quoting *Soto-Lopez v. N.Y.C. Civil Serv. Comm'n*, 840 F.2d 162, 168 (2d Cir. 1988)), but the plaintiffs have not alleged selective discontinuance of enforcement here.

Consistent with the general "capable of repetition, yet evading review" exception, the Supreme Court has "provided the relevant legal framework for assessing mootness in COVID restriction lawsuits." *Hopkins Hawley LLC v. Cuomo*, 2021 WL 1894277, at *3-4 (S.D.N.Y. May 11, 2021). More specifically, it has "articulate[d] two [COVID-19-specific] mootness principles . . . : (1) a lawsuit brought against COVID restrictions is not simply moot because the restrictions at issue have been rescinded; and (2) if the COVID restrictions . . . have been rescinded in the course of litigation, the relevant inquiry is whether the plaintiff remains under a 'constant threat' of those restrictions being reintroduced in the future." *Id.* (citing *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020); *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021)); *see also Floyd v. Filipowski*, 2022 WL 2657173, at *4-5 (S.D.N.Y. July 8, 2022) (identifying and applying the same "mootness principles"); *Jones v. Cuomo*, 542 F. Supp. 3d 207, 215-16 (S.D.N.Y. 2021) (same).

The defendants argue that the plaintiffs' claims for injunctive relief are moot because the mask mandate was rescinded on March 2, 2022.[10] Docket Item 30-5 at 17-18; Docket Item 35-3 at 2; Docket Item 66 at 20-21; Docket Item 68-4 at 5; Docket Item 72-1 at 10; Docket Item 79-4 at 9-10. The plaintiffs concede that the mask mandate was rescinded, but they argue that their claims for injunctive relief are not moot because the mask mandate "could be reinstated any time"—indeed, even "at the

---

[10] Some defendants argue that the entire case is moot. *See* Docket Item 35-3 at 2; Docket Item 72-1 at 10; Docket Item 79-4 at 9. But even though the mask mandate has been rescinded, the plaintiffs' claim for damages presents a live controversy. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 77 (2013) ("[A] claim for damages cannot evade review; it remains live until it is settled, judicially resolved, or barred by a statute of limitations.").

whim of the authorities."  Docket Item 47 at 2-4; Docket Item 75 at 1-4.  This Court agrees with the defendants: under both traditional mootness analysis and the COVID-19-specific mootness framework laid out by the Supreme Court, the plaintiffs' claims for injunctive relief are moot.

First, the plaintiffs have not shown that there is a "reasonable expectation" that the defendants will reimplement a mask mandate, as is required to invoke the "capable of repetition, yet evading review" rule.  *See Lillbask*, 397 F.3d at 85.  The plaintiffs cite no evidence—such as statements from the defendants—to support their fear that the mask mandate will be reimposed.  *See* Docket Items 47 and 75.  Rather, they argue that the defendants "have never indicated that [the] mask mandate[] *cannot* be reimposed," Docket Item 47 at 2 (emphasis added); Docket Item 75 at 1-2 (emphasis added), and they cite a statement from Dr. Anthony Fauci, who is not a defendant in this case, Docket Item 47 at 2; Docket Item 75 at 1-2.  None of that suggests that the defendants intend to reimplement a mask mandate.[11]  *Cf. Harrison*, 981 F.2d at 59 (noting that an "announced intention to return to the conduct of the past" can "support the exercise of jurisdiction" (citation and internal quotation marks omitted)).

For similar reasons, the plaintiffs have not shown that they "remain[] under a 'constant threat'" that the mask mandate will be reimposed, as the Supreme Court has suggested is necessary to establish a live controversy when a COVID-19 restriction is rescinded.  *See Hopkins Hawley*, 2021 WL 1894277, at *3-4 (quoting *Roman Catholic Diocese*, 141 S. Ct at 68)).  The plaintiffs do not allege that the mask mandate has been

---

[11] The fact that nearly a year has passed since the mask mandate was rescinded without being reimposed lends further support to that conclusion.

reimplemented since it was lifted nearly a year ago.  And given the current state of the pandemic, this Court finds that there is no reasonable threat—let alone a constant threat—that the mandate will be reimposed.

In short, the plaintiffs' fear that a mask mandate will be reinstituted is speculative. Of course, it is impossible to say that such a mandate will never be issued again.  But the theoretical possibility that a mask mandate may someday be reimposed does not establish a reasonable expectation or constant threat of that possibility.

The plaintiffs' claims for injunctive relief therefore are dismissed as moot.

## II.     FAILURE TO STATE A CLAIM

### A.     First Amendment Claims

The plaintiffs assert that the mask mandate violated their children's rights under the First Amendment.  Docket Item 1 at ¶ 294.  The defendants argue that the complaint states neither a free speech claim nor a freedom of association claim.  Docket Item 30-5 at 18-20; Docket Item 66 at 25-32; Docket Item 72-1 at 15-17; Docket Item 79-4 at 15. The plaintiffs respond that the defendants "provide no binding or persuasive authority" on either point, but they do not otherwise substantively address the defendants' arguments.  Docket Item 47 at 13-14; Docket Item 75 at 13.  This Court finds the defendants' reasoning persuasive and agrees that the plaintiffs have not plausibly alleged a First Amendment violation.

#### 1.     Free Speech

"The Free Speech Clause [of the First Amendment] restricts government regulation of private speech."  *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009).  But it "does not prevent restrictions directed at . . . conduct from imposing

incidental burdens on speech." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011); *see also Texas v. Johnson*, 491 U.S. 397, 407 ("[W]here speech and nonspeech elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." (internal quotation marks omitted) (quoting *United States v. O'Brien*, 391 U.S. 367, 376 (1968))).

Accordingly, "a conduct-regulating statute of general application that imposes an incidental burden on the exercise of free speech rights does not implicate the First Amendment." *Church of Am. Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 209 (2d Cir. 2004) (citing *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706 (1986)); *see also L.T. v. Zucker*, 2021 WL 4775215, at *4 (N.D.N.Y. Oct. 13, 2021) ("[T]he First Amendment is only implicated where the conduct a plaintiff claims is protected speech is also the conduct directly regulated by the government action."). "Rather, an infringement on speech only implicates the First Amendment . . . if conduct with a 'significant expressive element' drew the legal remedy or the government action 'has the inevitable effect of singling out those engaged in expressive activity.'" *L.T.*, 2021 WL 4775215, at *5 (quoting *Arcara*, 478 U.S. at 706-07).

The plaintiffs argue that the mask mandate violated their children's free speech rights. Docket Item 1 at ¶ 294. But they do not argue that mask-wearing—or refusing to wear a mask—is itself expressive conduct entitled to First Amendment protection. *See generally* Docket Item 1. Instead, they argue that masks "suppress and conceal facial expressions," which "are a form of communication" used to express oneself and to

"decode [others'] emotional states or reactions."  *Id.* at ¶¶ 130-31, 134.  That argument misses the mark.

First, the mask mandate was issued to regulate conduct—mask-wearing—not to regulate communication via facial expression.  So it was a "a conduct-regulating" mandate "of general application" that perhaps "impose[d] an incidental burden on the exercise of free speech."  *See Kerik*, 356 F.3d at 209.  Second, it did not "singl[e] out those engaged in expressive activity," *see L.T.*, 2021 WL 4775215, at *5; rather, it applied to almost all "state residents" who were present in public places, Docket Item 1 at ¶¶ 117-19.  Therefore, even if the mask mandate incidentally affected the children's ability to communicate, it did not implicate the Free Speech Clause.  *See Kerik*, 356 F.3d at 209.[12]

The plaintiffs' free speech claim therefore is dismissed.

### 2.    Freedom of Association

The First Amendment also "protects one's 'freedom of expressive association'—that is, '[the] right to associate for the purpose of engaging in those activities protected by the First Amendment.'"  *Emilee Carpenter, LLC v. James*, 575 F. Supp. 3d 353, 371 (W.D.N.Y. 2021) (alteration in original) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984)).  But as it may with respect to free speech, the "government may engage in

---

[12] The defendants argue in the alternative that facial expressions are not speech that is entitled to First Amendment protection, Docket Item 30-5 at 20, Docket Item 66 at 27-28, and that the mask mandate did not actually impact the wearers' ability to communicate, Docket Item 66 at 25-26.  Because this Court holds that the mask mandate does not implicate the Free Speech Clause, it does not reach those arguments.

some conduct that incidentally inhibits protected forms of association." *Fighting Finest, Inc. v. Bratton*, 95 F.3d 224, 228 (2d Cir. 1996).

The plaintiffs allege that the mask mandate violates their children's freedom of association. Docket Item 1 at ¶ 294. But several courts considering mask mandates have rejected identical claims. *See, e.g.*, *Fradys v. Rondeau*, 2022 WL 1289674, at *3 (S.D.N.Y. Apr. 29, 2022) ("Courts have held correctly that mask requirements do not violate the First Amendment because . . . [they] impose[] at most a *de minimis* burden on [an] individual's ability to associate." (italicization added)); *Donohue*, 2022 WL 673636, at *8 (noting that "the complaint lacks any facts suggesting that the mask mandate burdens a student's ability to enter into and maintain certain intimate or private relationships" (citation and internal quotation marks omitted)); *see also Denis v. Ige*, 538 F. Supp. 3d 1063, 1080 (D. Haw. 2021) ("The Mask Mandates allow anyone to freely assemble and associate as long as they are socially distanced or wearing a mask. They therefore do not prohibit assemblies, but instead place a minor restriction on the way they occur." (alterations, citations, and internal quotation marks omitted)).

While the plaintiffs are correct that those cases are not binding authority, this Court nevertheless agrees with their reasoning: "mask requirements do not violate the First Amendment because a requirement that individuals weak a mask in a place where people gather imposes at most a *de minimis* burden on [an] individual's ability to associate." *See Fradys*, 2022 WL 1289674, at *3 (italicization added). What is more, the plaintiffs plead few facts to support their freedom of association claim. One plaintiff says that her children were "not allowed to play tag or be near each other at recess." Docket Item 1 at ¶ 29. A few others allege that their children were kept separate from

other students.  *Id.* at ¶¶ 26, 114.  But those restrictions were imposed only because the plaintiffs' children refused to wear masks—again, a *de minimis* burden on the right to associate.  And the plaintiffs do not claim that their children were not permitted to associate or assemble even if masked.  *See* Docket Items 1, 47, 75.

The plaintiffs' freedom of association claim therefore is dismissed.

### B.   Guarantee Clause

The Guarantee Clause provides that the United States "shall guarantee to every State in this Union a Republican Form of Government."  U.S. Const. art. IV, § 4.  It typically "is invoked . . . to challenge an action of the federal government," *Lewis v. Cuomo*, 2021 WL 5827274, at *9 (W.D.N.Y. Dec. 8, 2021); "[c]hallenges to state action premised on violations of the Guarantee Clause traditionally present nonjusticiable political questions,"[13] *Futia v. Westchester Cnty. Bd. of Legislators*, 2020 WL 4570494, at *6 (S.D.N.Y. Aug. 6, 2020) (citing *Rucho*, 139 S. Ct. at 2506 ("This Court has several times concluded . . . that the Guarantee Clause does not provide the basis for a justiciable claim.")); *see also Lewis*, 2021 WL 5827274, at *9 ("The [] Supreme Court and other courts have typically found that '[G]uarantee [C]lause' challenges to state action involve non[]justiciable political questions." (collecting cases)).  Some courts, however, have noted that although the Supreme Court "has not yet been presented with a justiciable claim," it has left open the possibility that a Guarantee Clause challenge to

---

[13] A nonjusticiable political question arises when "the judicial department has no business entertaining [a] claim of unlawfulness[ ]because the question is entrusted to one of the political branches or involves no judicially enforceable rights."  *Rucho v. Common Cause*, 139 S. Ct. 2484, 2494 (2019) (quoting *Vieth v. Jubelirer*, 541 U.S. 267, 277 (2004) (plurality opinion)).  Such questions are "outside the courts' competence and therefore beyond the courts' jurisdiction."  *Id.*

action by a state may be justiciable in some circumstances. *See, e.g.*, *Democratic Party of Wis. v. Vos*, 966 F.3d 581, 588-89 (7th Cir. 2020).

The plaintiffs allege that the defendants violated the Guarantee Clause when the state legislature improperly delegated "the power to issue directives" to the "executive branch." Docket Item 1 at ¶¶ 302-11. The defendants argue that this claim raises a nonjusticiable political question. Docket Item 30-5; Docket Item 66 at 25; Docket Item 72-1 at 17-18; Docket Item 79-4 at 16. In response, the plaintiffs say that this Court is not bound by precedent addressing the justiciability of Guarantee Clause claims because the facts of this case are unique and present "a case of first impression." Docket Item 47 at 7-11.

But this Court agrees with the defendants and "declines to find that this is one of the rare cases in which a Guarantee Clause claim might be justiciable." *See Lewis*, 2021 WL 5827274, at *9. There is nothing about the defendants' conduct in this case that is inconsistent with a "Republican Form of Government," and the plaintiffs' Guarantee Clause claim does nothing more than ask this Court to interfere in an issue entrusted to the other branches of government. Moreover, the plaintiffs' assertion that "[t]here are no cases concerning the Guarantee Clause that remotely resemble these facts," Docket Item 47 at 9, is belied by *Lewis*, a COVID-19 restriction case in which the court held that the New York State legislature's delegation of emergency powers to the governor was a nonjusticiable political question, 2021 WL 5827274, at *9.[14]

---

[14] The plaintiffs' counsel in this case has acknowledged that he was "a plaintiff [him]self and the plaintiffs' counsel" in *Lewis*, *see* Docket Item 75 at 4, where he advanced a similar Guarantee Clause argument. *Compare* Docket Item 47 at 7 (arguing that the Guarantee Clause "has been largely ignored for 200 years" and that "it is time to dust [it] off . . . and enforce it"); 9 ("There are no cases concerning the

25

Based on the court's reasoning in that case, and because the plaintiffs provide no reason for this Court to depart from the general rule that Guarantee Clause challenges to state action are nonjusticiable, the plaintiffs' Guarantee Clause claim is dismissed.

### C.    Supremacy Clause

The plaintiffs allege that the mask mandate violated provisions of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 360bbb-3, and federal regulations issued by the Food and Drug Administration, 21 C.F.R. § 50.20, and thus violated the Supremacy Clause.  Docket Item 1 at ¶¶ 312-30.  The defendants argue that the Supremacy Clause does not create a private right of action, Docket Item 30-5 at 25-26; Docket Item 66 at 40-41; Docket Item 72-1 at 20-21; Docket Item 79-4 at 18.  The plaintiffs do not respond to that argument.  *See* Docket Items 47, 75-77, 80.

The Supremacy Clause "is not the source of any federal rights, and certainly does not create a cause of action."  *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324-25 (2015) (citations and internal quotation marks omitted).  It therefore does not grant the plaintiffs the power to enforce federal laws or regulations, including the FDCA.  In fact, the FDCA explicitly provides that only the federal government—and in rare circumstances, state governments—may bring an action to enforce it.  21 U.S.C. § 337; *see also Frei v. Taro Pharms. U.S.A., Inc.*, 443 F. Supp. 3d 456, 468 (S.D.N.Y.

---

Guarantee Clause that remotely resemble these facts."), *with Lewis*, 2021 WL 5827274, at *9 ("Plaintiffs merely urge the Court to reject the non-justiciability argument since '[t]here are no cases concerning the Guarantee Clause that remotely resemble these facts.'  Indeed, [p]laintiffs contend that 'it is time to dust off the Guarantee Clause and enforce it,' since it 'has been largely ignored for 200 years.'").

2020) ("[T]he FDCA does not provide a private right of action for a defendant's violation of its provisions.").  And because the statute under which a regulation is promulgated dictates whether a private right of action can enforce that regulation, *Lussoro v. Ocean Fin. Fed. Credit Union*, 456 F. Supp. 3d 474, 492-93 (E.D.N.Y. 2020), 21 C.F.R. § 50.20 does not create a private right of action either, *see* 21 C.F.R § 50.1 ("This part applies to all clinical investigations regulated by the Food and Drug Administration under . . . the [FDCA].").[15]

The plaintiffs' Supremacy Clause claim therefore is dismissed.

### D.     Fourth Amendment Claim: Unlawful Seizure

The Fourth Amendment protects an individual from unreasonable seizure of his or her person.  *California v. Hodari D.*, 499 U.S. 621, 624 (1991).  It "applies when []'objectionable conduct occur[s] in the context of a criminal investigation or other form of governmental investigation or activity.'"  *Masciotta v. Clarkstown Cent. Sch. Dist.*, 136 F. Supp. 3d 527, 537 (S.D.N.Y. 2015) (alterations omitted) (quoting *Poe v. Leonard*, 282 F.3d 123, 136 (2d Cir. 2002)).  A seizure of the person occurs when a government official, "by means of physical force or [a] show of authority, in some way restrains the liberty of a citizen.'"  *Edrei v. City of New York*, 254 F. Supp. 3d 565, 573 (S.D.N.Y.

---

[15] What is more, the plaintiffs' argument may well fail substantively because it hinges on the mask mandate's being a clinical investigation.  *See* Docket Item 1 at ¶¶ 323-29 (alleging that "the mask remains in the clinical investigation stage" in terms of its effectiveness at preventing the spread of COVID-19 and that the mask mandate thus "violates federal law and regulations governing the administration of experimental medicine").  This Court is not convinced that the mask mandate is a "clinical investigation" within the meaning of federal law and regulations.  *See Doe v. Franklin Square Union Free Sch. Dist.*, 568 F. Supp. 3d 270, 293 (E.D.N.Y. 2021) ("The Mask Mandate is not an experiment or clinical trial; it is a school safety measure.").

2017) (alterations omitted) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)); *see also Torres v. Madrid*, 141 S. Ct. 989, 998 (2021) ("A seizure requires the use of force *with intent to restrain*." (emphasis in original)).

The plaintiffs allege that the mask mandate constituted an unlawful seizure in violation of the Fourth Amendment because it violated their children's "clearly established rights to liberty and personal security."  Docket Item 1 at ¶¶ 298-99.  The defendants argue that the plaintiffs have failed to state a claim under the Fourth Amendment because they have not alleged that their children were seized in any way. Docket Item 30-5 at 23-25; Docket Item 66 at 32-33; Docket Item 72-1 at 19-20; Docket Item 79-4 at 18.  The plaintiffs respond that the mask mandate is "a massive violation of [their children's] physical integrity, along the lines of a bodily seizure," and that "this is essentially a case of first impression."  Docket Item 47 at 11-13; Docket Item 75 at 11-13.  This Court again agrees with the defendants.

As a threshold matter, the plaintiffs' argument that the mask mandate itself is "a massive violation of [their children's] physical integrity," Docket Item 47 at 11, belongs in the context of a substantive due process claim—which is where this Court addresses it, *see infra* at 32-34.  So the plaintiffs' unlawful seizure claim must rest on the ways in which they allege the defendants restrained their children's freedom of movement: by physically isolating them from their classmates.  *See, e.g.*, Docket Item 1 at ¶¶ 26, 72.

At least one court in this Circuit has rejected an unlawful seizure claim in the context of a mask mandate.  *See Donohue*, 2022 WL 673636, at *8 (concluding that the plaintiffs "have not alleged any facts raising an inference that [the d]efendants ever made a seizure" by imposing a mask mandate); *see also Reinoehl v. Whitmer*, 2022 WL

1110273, at *3 (W.D. Mich. Feb. 3, 2022), *report and recommendation adopted*, 2022 WL 855266 (W.D. Mich. Mar. 23, 2022) (noting that the mask mandate in question "does not authorize, or purport to authorize, the unlawful search or seizure of any person not wearing a mask"). This Court finds the reasoning in *Donohue* persuasive: like the plaintiffs in that case, the plaintiffs here have not alleged that the defendants conducted a seizure within the meaning of the Fourth Amendment.

Typically, cases finding that a Fourth Amendment seizure occurred in a public school involve situations where a student feels that his or her liberty is restrained because he or she was under investigation. *See, e.g.*, *Phillips v. County of Orange*, 894 F. Supp. 2d 345, 363 (S.D.N.Y. 2012) (holding that a five-year-old student was seized when she "was removed from her class by a school administrator, taken to a room with three adults with the door closed, told that she 'had to' answer their questions, and [told] that the examination was 'like a test'"); *Stoot v. City of Everett*, 582 F.3d 910, 918 (9th Cir. 2009) (holding that an in-school interview of a student suspecting of committing child abuse was a seizure under the Fourth Amendment); *Shuman v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146-47 (3d Cir. 2005) (holding that a student was seized when the assistant principal questioned him about allegations of sexual misconduct and then did not allow him to return to class for several hours); *accord Poe*, 282 F.3d at 136 (noting that the Fourth Amendment applies in "a criminal investigation or other form of governmental investigation or activity").[16]  But the plaintiffs here do not allege that their

---

[16] There was no investigation when the court found that a seizure had occurred in *Bisignano v. Harrison Cent. Sch. Dist.*, 113 F. Supp. 2d 591, 596 (S.D.N.Y. 2000), but that case involved extreme facts that are not analogous to the plaintiffs' allegations in this action: in *Bisignano*, a student found a twenty-dollar bill on the floor and her teacher shut her in an equipment closet when she would not give him the money. *Id.* at 593-94.

children were subject to any investigatory seizure because they would not wear masks. *See generally* Docket Item 1.  Rather, they allege that their children were suspended or segregated—not seized or restrained—when they refused to comply with the mask mandate.[17]

In sum, the plaintiffs have not plausibly alleged that the defendants used "physical force or [a] show of authority" to "restrain [their children's] liberty."  *See Terry*, 392 U.S. at 19 n.16.  Although school officials separated the plaintiffs' children from their classmates, they did not plausibly do so "with intent to restrain" the children's liberty.  *See Torres*, 141 S. Ct. at 998 (emphasis omitted).  In fact, the students were free to return to class—so long as they wore masks, a *de minimis* burden.  The plaintiffs therefore have not plausibly alleged that the defendants seized their children by way of the mask mandate.

For that reason, the plaintiffs' Fourth Amendment claim is dismissed.

### E.    Fourteenth Amendment Claims[18]

####     1.    Substantive Due Process

"The Due Process Clause of the Fourteenth Amendment embodies a substantive component that protects against certain government actions regardless of the fairness

---

[17] Although some students may have been sent to the principal's office, that is no different than what might be done for a non-mask-related rule infraction.  And the public school system would cease to function if any student sent to the principal's office or suspended for violating school policies could bring an unlawful seizure claim.  What is more, that "discipline" likely was not intended to punish the students who refused to mask, but to ensure the safety of their classmates and school staff by preventing the spread of COVID-19.

[18] To the extent that the plaintiffs assert a Fifth Amendment due process claim, *see* Docket Item 1 at ¶¶ 300-01, 310-11, that claim is dismissed because "the Due Process Clause of the Fifth Amendment applies only to actions by the United States

of the procedures used to implement them." *Franklin Square*, 568 F. Supp. 3d at 288-89 (alterations and internal quotation marks omitted) (quoting *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 460 (2d Cir. 1996)).  In other words, "[s]ubstantive due process 'is the right to be free of arbitrary government action that infringes a protected right.'" *Montalbano v. Port Auth. of N.Y. & N.J.*, 843 F. Supp. 2d 473, 483 (S.D.N.Y. 2012) (emphasis omitted) (quoting *O'Connor v. Pierson*, 426 F.3d 187, 200 n.6 (2d Cir. 2005)).

Generally, a government action that infringes a protected right "need only be reasonably related to a legitimate state objective." *Franklin Square*, 568 F. Supp. 3d at 289 (quoting *Immediato*, 73 F.3d at 461).  But "when the [government action] infringes a fundamental right, it must . . . be 'narrowly tailored to serve a compelling state interest.'" *Id.* (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)).  "A right is fundamental if it is 'implicit in the concept of ordered liberty' or 'deeply rooted in this [n]ation's history and tradition.'" *Id.* (citations omitted).

The plaintiffs allege that the mask mandate violated their own and their children's basic rights and thus violated their rights to substantive due process.  Docket Item 1 at ¶¶ 300-01; *see id.* at ¶¶ 295-96.  More specifically, they allege that the mandate infringed upon: (1) a child's right not to wear a mask, *id.* at ¶¶ 300-01; and (2) a parent's right "to make decisions concerning the care, custody, and control of [his or her] children" and to control those children's education, *id.* at ¶¶ 295-96 (citations omitted). The defendants say that the complaint fails to state a substantive due process claim on

---

government and federal employees," *see Solomon v. City of Rochester*, 449 F. Supp. 3d 104, 113 (W.D.N.Y. 2020) (alteration and citations omitted)—not state or municipal officials.

either count.  Docket Item 30-5 at 20-22; Docket Item 66 at 33-40; Docket Item 72-1 at 18-19; Docket Item 79-4 at 17.

<em>a.     Right Not to Wear a Mask</em>

The plaintiffs allege that "[r]equiring healthy children to wear masks six hours a day, five days a week, ten months a year and indefinitely . . . without clear scientific proof that such an unprecedented mandate provides the children themselves with a net health benefit, violates substantive due process."  Docket Item 1 at ¶ 301.  The defendants respond that this argument is unavailing, Docket Item 30-5 at 18; Docket Item 66 at 33-35; Docket Item 72-1 at 12-13, especially in light of *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), which "has been called 'the controlling Supreme Court precedent that squarely governs judicial review of rights-challenges to emergency public health measures" in the context of COVID-19, *Lebanon Valley Auto Racing Corp. v. Cuomo*, 478 F. Supp. 3d 389, 396 (N.D.N.Y. 2020) (collecting cases).

In *Jacobson*, the Supreme Court rejected the plaintiff's argument that a smallpox vaccination mandate violated his substantive due process right to bodily autonomy. *Jacobson*, 197 U.S. at 12, 26, 31-32.  Rather, the Court said, the state's police power grants it the authority "to safeguard the public health and the public safety" by any means that do not violate the Constitution—that is, by any means that are not "beyond all question, a plain, palpable invasion of rights secured by the fundamental law."  *Id.* at 24-25, 31.  As many courts have held since the onset of the COVID-19 pandemic, *Jacobson* affirms a state's power to impose regulations to benefit the public health— even when those regulations impose some restraints on individuals.[19]  *See, e.g.*, *Young*

---

[19] At its core, *Jacobson* is about the state's power to protect the many by imposing a small burden on the few who insist on invoking their personal freedom at the

*v. James*, 2020 WL 6572798, at *3-4 (S.D.N.Y. Oct. 26, 2020); *Geller v. Cuomo*, 476 F.

Supp. 3d 1, 15-16 (S.D.N.Y. 2020) (collecting cases); *see also Jacobson*, 197 U.S. at

26 ("This court has more than once recognized it as a fundamental principle that

persons and property are subjected to all kinds of restraints and burdens in order to

secure the general comfort, health, and prosperity of the state." (citations and internal

quotation marks omitted)).[20]

---

expense of their neighbors' well-being.  *See generally* John Stuart Mill, *On Liberty*, 9
(1859) ("[T]he only purpose for which power can be rightfully exercised over any
member of a civilized community, against his will, is to prevent harm to others.  His own
good, either physical or moral, is not a sufficient warrant.").  In this Court's view, it is sad
that states need to exercise that power.  But cases like *Jacobson*—and this one—
underscore that need.

[20] The plaintiffs take great umbrage with *Jacobson*'s resurgence in the COVID-19
era.  *See* Docket Item 47 at 5-7; Docket Item 75 at 5-7.  They argue that the Supreme
Court's decision "is of no relevance to this case whatsoever" because it "deals with a
mandatory vaccine," "deals with a statute," and "heavily depends on centuries of
predominant and informed opinion about smallpox."  Docket Item 47 at 5-7; Docket Item
75 at 5-7.  But those attempts to distinguish *Jacobson* do not address its holdings about
the scope of the state's police power.  Indeed, the plaintiffs do not cite any authority
suggesting that *Jacobson*'s applicability is limited to cases in which those three
criteria—or any of them—are met.  *See generally* Docket Items 47 and 75.

The plaintiffs do cite Justice Gorsuch's concurrence in *Roman Catholic Diocese*,
141 S. Ct. at 70-71, in which the plaintiff challenged COVID-19 restrictions that
incidentally burdened the right to the free exercise of religion.  Docket Item 47 at 6-7;
Docket Item 75 at 6-7.  Justice Gorsuch suggested that *Jacobson* might not apply when
a regulation impacts the "textually explicit right to religious exercise" for an indefinite
time.  *Roman Catholic Diocese*, 141 S. Ct. at 70-71; *see also Agudath Israel of Am. v.
Cuomo*, 983 F.3d 620, 635 (declining to apply *Jacobson* in a free exercise case
because *Jacobson* "did not address the free exercise of religion" (citations omitted)).
But the plaintiffs here do not argue that the mask mandate interfered with their religious
practice even for the brief period of time when it was in effect.  *See generally* Docket
Item 1.

The plaintiffs therefore provide no reason that this Court should not apply
*Jacobson* to the mask mandate, as many courts recently have done under similar
circumstances.  *See, e.g.*, *Geller*, 476 F. Supp. 3d at 15-16 (collecting cases).

Here, the mask mandate was imposed as a public health measure to combat the spread of COVID-19.  *See* Docket Item 1 at ¶¶ 218-22.  Although the plaintiffs may disagree with the effectiveness of the mandate from a public health perspective, *Jacobson* affirms the state's ability to weigh public health benefits and to impose such a mandate.  *See also S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613-14 (2020) (Roberts, C.J., concurring) (noting that public health measures imposed by the state "should not be subject to second-guessing by an unelected federal judiciary, which lacks the background, competence, and expertise to assess public health and is not accountable to the people" (citation and internal quotation marks omitted)).  Because requiring public school students to wear masks is not "beyond all question, a plain, palpable invasion of rights secured by the fundamental law"—to the contrary, this claim is comparable to the bodily autonomy argument the Supreme Court rejected in *Jacobson*—the mask mandate passes muster.  *See Jacobson*, 197 U.S. at 31; *see also Franklin Square*, 568 F. Supp. 3d at 288 (collecting cases "uniformly f[inding] that public mask mandates do not implicate fundamental rights").

The plaintiffs' substantive due process claim based on their children's right not to wear masks therefore fails.

### b.    Parental Rights

The plaintiffs argue that the mask mandate violated their "fundamental right . . . to make decisions concerning the care, custody, and control of their children" and to control their children's education.  Docket Item 1 at ¶¶ 295-96 (citations omitted).  Courts have indeed recognized the existence of such a right.  *See, e.g.*, *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (collecting cases).  But the scope of that right is not limitless.

For example, the Second Circuit has noted that the cases recognizing parents'
rights to control their children's education "do not begin to suggest the existence of a
fundamental right of every parent to tell a public school what his or her child will and will
not be taught."  *Leebaert v. Harrington*, 332 F.3d 134, 141 (2d Cir. 2003); *see also
Runyon v. McCrary*, 427 U.S. 160, 177 (1976) (suggesting that there is "no support [for]
the contention that parents may replace state educational requirements with their own
idiosyncratic views of what knowledge a child needs to be a productive and happy
member of society").  Indeed, if every parent could dictate what his or her child learns
and under what rules and regulations, the public school system could not function.
Perhaps for that reason, the Second Circuit has explicitly held that "rational basis review
is appropriate" when a parent invokes that right to challenge "a state regulation."
*Immediato*, 73 F.3d at 461.

The claim that the mask mandate violated the plaintiffs' parental rights therefore
is subject to rational basis review.  Under that standard, "government action passes
muster 'if there is any reasonably conceivable state of facts that could provide a rational
basis'" for that action.  *Franklin Square*, 568 F. Supp. 3d at 292 (quoting *Heller v. Doe*,
509 U.S. 312, 319 (1993)).  And there certainly is a rational basis for the mask mandate
here.

Indeed, many courts already have addressed this issue, and there is a large
body of case law holding that mask mandates survive rational basis review.  *See, e.g.*,
*id.*; *Donohue*, 2022 WL 673636, at *10; *see also Zinman v. Nova Se. Univ., Inc.*, 2021
WL 4025722, at *12 (S.D. Fl. Aug. 30, 2021) (collecting cases).  This Court agrees with
those holdings: the reported benefits of masking—even if the plaintiffs disagree with

them altogether or think that masking is too high a price to pay for too little protection—provide a rational basis for the mask mandate.[21]

In sum, because it holds that a parent does not have a fundamental right to decide that his or her child need not comply with a mandate requiring masking in public schools during a pandemic, this Court applies rational basis review to evaluate the mask mandate.  It is not the only court to do so.  *See, e.g.*, *Franklin Square*, 568 F. Supp. 3d at 291 (holding that a mask mandate "does not impinge upon any fundamental right" because "[w]hat is true for curricular requirements is just as true for other educational regulations like the [m]ask [m]andate"); *Oberheim v. Bason*, 565 F. Supp. 3d 607, 618-19 (M.D. Pa. 2021) ("[A]lthough parents possess a fundamental right to raise their children without undue state interference, this right does not extend to the [p]laintiffs' decision to disregard the [s]chool [d]istrict's policy by having their children attend school without wearing masks.").  In fact, at least one court has held that even vaccination requirements for public school children—surely, a deeper intrusion into a parent's control of his or her child than a mask mandate—do not implicate a parent's fundamental rights.  *See Doe v. Zucker*, 520 F. Supp. 3d 217, 250 (N.D.N.Y. 2021).

Because there is a rational basis for the mask mandate, the plaintiffs' substantive due process claim based on their parental rights is dismissed.

---

[21] Even if the mask mandates were subject to a higher level of constitutional scrutiny, they might well make the grade.  *See Roman Catholic Diocese*, 141 S. Ct. at 67 ("Stemming the spread of COVID-19 is unquestionably a compelling interest.").

2.      **Procedural Due Process**

The plaintiffs argue that the mask mandate also violated their children's right to

procedural due process because the defendants lacked "jurisdiction to issue" it.  Docket

Item 1 at ¶¶ 302-11 (alleging that "[t]he [l]egislature may not delegate its lawmaking

powers to the executive branch").[22]  The defendants argue that the complaint fails to

state a procedural due process claim.  Docket Item 30-5 at 22-23; Docket Item 72-1 at

17; Docket Item 79-4 at 16.  The plaintiffs' only response to that argument is that the

defendants "misconceive of the plaintiffs' challenge as one concerning classic

procedural due process" and that that the plaintiffs instead "complain about . . . the lack

of legislation at all and the enactment of drastic, sweeping[,] and unprecedented edicts

by executive fiat."  Docket Item 47 at 11; Docket Item 75 at 11.  In other words, the

plaintiffs complain about the delegation of rulemaking authority and the exercise of

executive power—the same concerns that they raise in their Guarantee Clause claim,

*see supra* at 24-26.  But the plaintiffs do not explain how those complaints state a

procedural due process claim.  *See generally* Docket Items 47 and 75.

"[I]t is black letter law that a person is not entitled to procedural due process

protections against government action that is legislative in nature."  *Hopkins Hawley*,

518 F. Supp. 3d at 714 (citing *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S.

441, 445 (1915)).  In the procedural due process context, the "legislative" label does not

refer to the government branch that took the challenged action; even an action taken by

the executive branch may be legislative in nature if it "has 'general application' and

_____

[22] The plaintiffs do not assert that the mask mandate otherwise violated
procedural due process.  *See generally* Docket Item 1.

looks to the future." *Id.* (citing *Interport Pilots Agency, Inc. v. Sammis*, 14 F.3d 133, 143 (2d Cir. 1994)); *see, e.g.*, *Bimber's Delwood, Inc. v. James*, 496 F. Supp. 3d 760, 782 (W.D.N.Y. 2020) ("Here, the challenged [e]xecutive [o]rders are legislative in nature."); *Everest Foods Inc. v. Cuomo*, 585 F. Supp. 3d 425, 438 (S.D.N.Y. 2022) ("[The p]laintiffs do not plausibly allege a deprivation of their procedural due process rights because [the d]efendants' [executive orders] and [emergency executive orders] were plainly legislative.").  A government action is "adjudicative," on the other hand, if it is "designed to adjudicate disputed facts in particular cases."  *Interport Pilots Agency*, 14 F.3d at 142.  And a person has procedural due process protection against adverse adjudicative—not legislative—actions.  *See Bimber's Delwood*, 496 F. Supp. 3d at 782.

Here, the mask mandate clearly was legislative in nature; it applied to public school students—and others in public places—generally and was not "designed to adjudicate disputed facts in particular cases."  *See Interport Pilots Agency*, 14 F.3d at 142-43.  Furthermore, it applied "prospectively" and did not impose retroactive penalties on anyone.  *See Hopkins Hawley*, 518 F. Supp. 3d at 714 (rejecting a procedural due process challenge to a COVID-19 restriction because the restriction was "legislative in nature"); *see also Donohue*, 2022 WL 673636, at *8 (rejecting a procedural due process challenge to a mask mandate because it "generally require[d] masking for teachers, staff, students, and visitors in schools, going forward").

The plaintiffs therefore have not stated a procedural due process claim, and that claim is dismissed.

###### F.     Ninth Amendment

The plaintiffs allege that the mask mandate violates their children's rights under the Ninth Amendment.  Docket Item 1 at ¶¶ 300-01.  But, as the defendants correctly argue, Docket Item 66 at 24; Docket Item 72-1 at 19; Docket Item 79-4 at 17-18, the Ninth Amendment is not "an independent source of individual rights," *Barnett v. Carberry*, 420 F. App'x 67, 69 (2d Cir. 2011) (summary order); *see also Ortiz v. City of New York*, 2013 WL 5339156, at *4 (S.D.N.Y. Sept. 24, 2013) ("There is no private right of action under the Ninth Amendment.").  In response, the plaintiffs say only that "the Ninth Amendment is relevant to deciding whether the plaintiffs[] state a cause of action" because the "right to breathe free" is "a natural right of every human being so obvious that it never occurred to the Founders that they needed to list it in the Bill of Rights." Docket Item 75 at 16 (some capitalization omitted).

This Court interprets that response as arguing that the Ninth Amendment bolsters the plaintiffs' numerous assertions that the mask mandate violates their children's rights under other provisions of law, and as a concession that it does not provide an independent cause of action.  But to the extent that the plaintiffs seek to raise any independent Ninth Amendment claims, those claims are dismissed because the Ninth Amendment does not create a private right of action.  *See Barnett*, 420 F. App'x at 69.

### III.    INDIVIDUAL CAPACITY CLAIMS

The defendants assert two additional bases for dismissal of the individual-capacity claims brought against them.

## A.      Failure to Allege Each Defendant's Personal Involvement

"A plaintiff asserting a [section] 1983 claim against a supervisory official in his individual capacity must allege that the supervisor was personally involved in the alleged constitutional deprivation."  *Rivera v. Fischer*, 655 F. Supp. 2d 235, 237 (W.D.N.Y. 2009) (citing *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001)).  A plaintiff cannot base such a claim on a theory of "supervisory liability," *Tangreti v. Bachmann*, 983 F.3d 609, 617-18 (2d Cir. 2020); rather, "a plaintiff must plead that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution," *id.* at 616 (quoting *Iqbal*, 556 U.S. at 676).

### 1.      Superintendent Defendants

The superintendent defendants move to dismiss on the ground that the complaint does not allege their personal involvement with the mask mandate.  Docket Item 30-5 at 26-27; Docket Item 35-3 at 2-3; Docket Item 66 at 21; Docket Item 79-4 at 11-12.  The plaintiffs respond simply by asserting the conclusion that the complaint "properly allege[s]" those defendants' personal involvement by alleging that they enforced the mask mandate.  Docket Item 47 at 15-16; Docket Item 75 at 14-15.

The complaint alleges that within their respective school districts, the superintendent defendants are responsible (1) "for enforcing and/or issuing orders and mandates requiring students to wear masks," (2) "for making sure that court orders are respected and enforced," and (3) "for mask-related disciplinary policies and procedures."  Docket Item 1 at ¶¶ 89-101.  It further alleges that each superintendent defendant "has . . . enforced mask mandates binding on the plaintiffs[' children]," *id.* at ¶ 107, including on January 25, 2022, after a state court struck down the mask

mandate, *id.* at ¶¶ 120-23; *see also* Docket Item 75 at 15 (arguing that the superintendent defendants "continued to enforce the mask mandate on January 25, 2022").

But the complaint's conclusory allegations about the superintendent defendants' enforcement of the mask mandate fall short of plausibly alleging those defendants' personal involvement, as is required to maintain a section 1983 action against a government official in his individual capacity. *See, e.g.*, *Viera v. Annucci*, 2019 WL 6134903, at *2 (W.D.N.Y. Aug. 8, 2019) (collecting cases). The plaintiffs offer no specific factual allegations about what actions the superintendent defendants took to enforce the mask mandate on January 25 or at any other time. *See generally* Docket Item 1. For example, the complaint does not allege that the superintendent defendants made an independent decision to require masks, decided to suspend students for not wearing masks, or stopped students from going to class without a mask. *See generally id.* And the plaintiffs cannot establish section 1983 liability based on the superintendent defendants' roles as supervisors of their respective districts. *See Tangreti*, 983 F.3d at 617-18.

The plaintiffs' individual-capacity claims against the superintendent defendants therefore are dismissed for failing to allege that those defendants were personally involved in the conduct at issue.

### 2.    Erie County Defendants

The Erie County defendants argue that the plaintiffs have not alleged their personal involvement in the mask mandate because the Erie County mask mandate was "never implemented within schools." Docket Item 68-4 at 5 (capitalization omitted).

But the plaintiffs say that after the state court struck down the state mask mandate, Erie County Executive Poloncarz "went out of his way" to publicly remind students that the Erie County mandate was "still in effect."  Docket Item 1 at ¶ 109; Docket Item 76 at 2. That allegation plausibly suggests that Poloncarz was personally involved in the enforcement of the mask mandate.

On the other hand, the plaintiffs do not explain how Burstein, the other Erie County defendant, was personally involved in enforcement efforts.  *See* Docket Item 76. In fact, the only act the complaint attributes to Burstein is that she "issued a[n order] similar" to the mandate issued by Poloncarz, *see* Docket Item 1 at ¶ 128; the complaint does not explain how Burstein enforced that order or even what the order required, *see generally* Docket Item 1.

The claims against Burstein in her individual capacity therefore are dismissed for failure to allege personal involvement.  But the individual-capacity claims against Poloncarz are not dismissed on that ground.

### B.    Qualified Immunity

Qualified immunity "protects public officials performing discretionary functions from personal liability in a civil suit for damages."  *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013) (citations and internal quotation marks omitted).  "Public officials are entitled to qualified immunity 'unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time."'"  *Hogue v. Scott*, 2021 WL 6050864, at *4 (D. Vt. Dec. 21, 2021) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2019)).

"[T]he Second Circuit has held that it is very difficult for [a qualified immunity] defense to succeed at the pleading stage" due to the doctrine's fact-specific nature. *Collins v. Ferguson*, 804 F. Supp. 2d 134, 140-41 (W.D.N.Y. 2011) (citations omitted); *see McKenna v. Wright*, 386 F.3d 432, 436-37 (2d Cir. 2004). But "[w]here the nonexistence of a constitutional right may be discerned from the face of the complaint, an official defendant sued in his individual capacity may be granted a dismissal on the ground of qualified immunity pursuant to Rule 12(b)(6)." *Vincent*, 718 F.3d at 167. At least one court in this circuit has applied that rule in the COVID-19 context, finding that public officials who implement COVID-19 restrictions are entitled to qualified immunity. *See Hogue*, 2021 WL 6050864, at *4-5.

The defendants have moved to dismiss the individual-capacity claims against them on the ground that they are entitled to qualified immunity. Docket Item 30-5 at 27; Docket Item 66 at 21-23; Docket Item 68-4 at 6; Docket Item 72-1 at 21-22; Docket Item 79-4 at 20; *see* Docket Item 35-3 at 3 (incorporating co-defendants' arguments). In response, the plaintiffs "call[] for qualified immunity to be abolished or extremely limited." Docket Item 47 at 4-5; Docket Item 75 at 4-5.

As discussed above, the plaintiffs have not plausibly alleged the violation of a constitutional right—let alone that "the unlawfulness of the defendants' conduct was 'clearly established at the time.'" *See Hogue*, 2021 WL 6050864, at *4. And rather than citing any authority to demonstrate that the defendants violated a clearly established right, the plaintiffs say that "[t]here is simply no need to point to a specific case for th[e] proposition" that the defendants "cannot exercise government power without explicit constitutional authority." Docket Item 47 at 5; Docket Item 75 at 5.

Because the plaintiffs have not plausibly pleaded that the defendants violated a clearly established right, the defendants are entitled to qualified immunity. The claims against the defendants in their individual capacities therefore are dismissed for that reason as well.

## IV.   OFFICIAL-CAPACITY CLAIMS

Each set of defendants asserts an additional basis for dismissal of the official-capacity claims brought against them.

### A.   Superintendent Defendants and Erie County Defendants

"[A section] 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself." *Coon v. Town of Springfield*, 404 F.3d 683, 687 (2d Cir. 2005). A municipality cannot be held liable under section 1983 unless the challenged action was undertaken pursuant to a municipal policy, custom, or practice. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). To hold a municipality liable under section 1983, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (citation omitted).

Several superintendent defendants and the Erie County defendants argue that the claims brought against them in their official capacities should be dismissed because the plaintiffs failed to plead a viable *Monell* claim. Docket Item 66 at 23-24; Docket Item 68-4 at 6-7; *see* Docket Item 35-3 at 2; Docket Item 79-4 at 21. The plaintiffs respond that the superintendent defendants "may be held liable in their official capacities because they are arguably 'final policymakers' with respect to choosing to enforce

44

unconstitutional state mandates," Docket Item 75 at 16, but they do not respond to the Erie County defendants' argument, *see* Docket Item 76.

This Court Finds that the plaintiffs have not raised a viable *Monell* claim against the superintendent defendants or the Erie County defendants.  Even assuming that the plaintiffs' allegations satisfy the first prong of a *Monell* claim, the plaintiffs have not plausibly alleged that they suffered a constitutional violation.  They therefore have not satisfied the second or third prongs of a *Monell* claim.

The plaintiffs' official-capacity claims against the superintendent defendants and the Erie County defendants therefore are dismissed.

### B.    State Defendants

The state defendants argue that the Eleventh Amendment bars the official-capacity claims against them.  Docket Item 72-1 at 21.  The plaintiffs do not respond to that argument.  *See* Docket Item 77.

"The Eleventh Amendment precludes suits against states unless the state expressly waives its immunity or Congress abrogates that immunity."  *Li v. Lorenzo*, 712 F. App'x 21, 22 (2d Cir. 2017) (summary order) (citing *CSX Transp., Inc. v. N.Y. State Off. of Real Prop. Servs.*, 306 F.3d 87, 94-95 (2d Cir. 2002)).  A claim for money damages under section 1983 against a state official in her official capacity "is in effect a claim against the governmental entity itself."  *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) (citing *Monell*, 436 U.S. at 691 (1978)).  Because "New York has not waived its immunity, nor has Congress abrogated it," *Li*, 712 F. App'x at 22 (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990)), the Eleventh Amendment bars

official-capacity suits for money damages against New York State and its officials in their official capacity, *see Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

The plaintiffs' official-capacity claims against the state defendants therefore are dismissed.

## V.   PUNITIVE DAMAGES

Finally, some superintendent defendants argue that they are "immune from punitive damages for the official capacity claims lodged against them." Docket Item 66 at 41-42; Docket Item 79-4 at 19-20; *see* Docket Item 35-3 at 3. Indeed, "[i]t is settled that punitive damages cannot be recovered from a municipal entity or municipal employees sued in their official capacity." *Villar v. County of Erie*, 2020 WL 33125, at *10 (W.D.N.Y. Jan 2, 2020) (collecting cases). Those same defendants argue that the plaintiffs have not alleged that their "conduct was 'driven by evil motive or intent or by reckless or callous indifference to the rights of others' as required to impose punitive damages against the individual defendants in their individual capacity." Docket Item 66 at 42 (quoting *Ehrlich v. Town of Glastonbury*, 348 F.3d 48, 52 (2d Cir. 2003)); Docket Item 79-4 at 19-20.

The plaintiffs do not substantively address these arguments. *See generally* Docket Item 75; Docket Item 80; *see also* Docket Item 78 at 12 (arguing that the plaintiffs have "abandoned their punitive damages claim by failing to respond to defendants' arguments for dismissal"). This Court therefore deems the plaintiffs' claims for punitive damages against those defendants to be abandoned, and they are dismissed for that reason. *See Felix v. City of New York*, 344 F. Supp. 3d 644, 654 (S.D.N.Y. 2018) ("Courts may, and generally will, deem a claim abandoned when a

plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."
(citations and internal quotation marks omitted)).

## CONCLUSION

For the reasons stated above, the defendants' motions to dismiss, Docket Items
30, 35, 64, 68, 72, and 79, are GRANTED.  The Clerk of the Court shall close this case.


SO ORDERED.

Dated:   March 1, 2023
          Buffalo, New York



                                      _/s/ Lawrence J. Vilardo_____
                                      LAWRENCE J. VILARDO
                                      UNITED STATES DISTRICT JUDGE

47